LAURENE WALKER BERGER, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

LAURENE W. BERGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

GEORGE B. BERGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 2833, 9064, 9518.   Promulgated December 13, 1946.

*John L. J. Hart, Esq.,* for the petitioners.
*Harlow B. King, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge*: The respondent recognizes the rule of long standing to the general effect that where a building is demolished for the purpose of securing a lease under the terms of which the lessee erects, at his own expense, a new building, the depreciated cost of the old building is recoverable ratably over the term of the lease. See *C. N. Manning*, 7 B. T. A. 286; *Anahme Realty Corporation*, 16 B. T. A. 749; affd., 42 Fed. (2d) 128; *Meyer Dana*, 30 B. T. A. 83; *Spinks Realty Co.* v. *Burnet*, 62 Fed. (2d) 860. The new asset is regarded as compensating value for the old asset, a substitution of assets, and operates to prevent a loss deduction of the unrecovered cost of the asset destroyed in the year the demolition takes place.

The respondent argues that the facts here are not within the rule. He contends that the petitioner sustained a loss in 1939 either because no new asset was in existence as a substitute for the one destroyed or because she demolished the old building on account of its lack of useful value in her business, depending upon the construction we place upon the facts.

Considering nothing more than that the lease, over the terms of which we are asked to amortize the cost, was not entered into until September 1940, there was no asset in existence in December 1939, when the demolition work was completed, to serve as a substitute for the one destroyed. However, our answer must be reached from a consideration of all of the facts. *Young* v. *Commissioner*, 59 Fed. (2d) 691; *Smith Real Estate Co.* v. *Page*, 67 Fed. (2d) 462. So viewed, there appears to be sufficient interrelation between the razing of the building and the lease entered nine months later to warrant the application of the rule.

It is clear that the petitioner, after considering several uses for the property, concluded that the most profitable future use of the asset would be a lease of the land for parking lot purposes. Offers made to lease the lots for such use had convinced her that she would experience no difficulty in obtaining a tenant when the land became available for occupancy. She refrained from entering into such a lease before work of razing the building commenced in order to derive the benefit of competition among prospective lessees for the lot.

While the work of tearing down the building was being done the petitioner received and accepted an offer to lease upon specified terms, subject to obtaining a permit from the city of Denver to cut curbs for passageways to the lots. Thus, when the demolition work was completed an agreement to lease was in effect, and continued to be until about the end of February 1940, when it expired by the limitation placed upon the offer. Until then the petitioner was legally bound to enter into the lease when the permit was granted.

The lapse of time between the expiration date of the agreement to lease and the actual execution of a lease seven months later is immaterial under the facts here. It is obvious that obtaining a permit was as essential to the preparation of the lots for parking purposes as clearing the land of improvements. Failure to receive a permit would have defeated the purpose petitioner had for future use of the lots. There was no relaxation on the part of petitioner in her efforts to obtain the consent, and promptly upon the issuance of a permit a lease was executed as the result of negotiations commenced during the preceding month. At no time from the summer of 1939 was there any change in the plans of petitioner to lease the land for a parking lot.

No cases are cited by the respondent holding that to be within the rule a substituting asset must be in existence when the old asset ceases to exist. He regards the facts in *Dayton Co.* v. *Commissioner*, 90 Fed. (2d) 767, as analogous to those here with respect to substitution or replacement of the asset demolished. In that case the building was not destroyed pursuant to a plan for further use of the property. Here, there was a purpose, from which there was no deviation, and a lease was entered into promptly when the land was available for use as a parking lot.

The record discloses a demand for the site as a parking lot, and a situation, not whether a lease could be obtained, but to whom the ground would be leased when available for use. Under the peculiar facts present here, we do not think it is material that a lease was not in effect when the building was torn down.

From what has been said it is apparent that there was no abandonment of the building except for the purpose of removing it in clearing the land for a parking lot.

The respondent contends in the alternative that the unextinguished cost of the building removed should be amortized over the life of the improvements, a period of more than five years, and that, in the absence of proof of a proper basis for such amortization, his action should be sustained. He cites *Triangle Realty Co.*, 12 B. T. A. 867. The case is distinguishable. There the amount involved represented an additional expenditure made by the petitioner on a new building to meet the special needs of the lessee and in order to obtain its consent to a postponement of the date of occupancy of the premises under the lease. The Board concluded that the amount represented part of the cost of the building constructed by the lessor and was not deductible over the five-year term of the lease. Here, it is clear that the building was removed to obtain a lease, not the improvements made by the lessee on the cleared land to meet the needs of his business.

The parties stipulated that the adjusted basis for the building was $41,591.67 at the time it was destroyed. The petitioner is claiming

the additional amount of $7,775, as set forth in our findings of fact for costs in obtaining the lease. The respondent contends that only the amount of $15, paid to counsel for approval of the lease entered into with Louis K. Sigman, may be so regarded.

Concerning the amount of $400 paid to obtain the lease with the Martin Drug Co., and the counsel fees of $125 and $25 for legal service in connection with the matter, the respondent contends that the expenditures were made to obtain the unexpired term of the lease. The benefits derived by petitioner, as lessor, did not extend beyond the termination date of the lease canceled. Such benefit as she derived from the property after the expiration of the original term of the lease resulted from ownership of the premises. The cost is deductible ratably over the unexpired term of the lease acquired. *Henry B. Miller*, 10 B. T. A. 383; *Clara Hellman Heller Trust No. 7610*, 7 T. C. 556. The term of the lease is not disclosed by the evidence. The parties may under Rule 50 be able to compute an allowance for amortization.

The form of lease agreed upon by petitioner and the Silco Tire & Oil Co. obligated petitioner to harden fills made on the premises after the building was torn down. The expenditure of $96 in 1939 for steam roller service seems to have been made to comply with that term of the lease anticipated. No proof was made that the cost was incurred to comply with a provision of the lease later entered into with Louis K. Sigman. Under the circumstances we do not regard the amount as a cost of obtaining the Sigman lease. Our answer concerning the fee of $100.75 paid to J. G. Holland for legal services must be the same. The services were rendered in connection with the proposed lease with the Silco Tire & Oil Co. and had no relation to the lease entered into with Sigman.

The amount of $843.82 was expended for several kinds of cement work, of which one-half, or $421.91, was borne by the petitioner as her share. The lease entered into with Sigman obligated the petitioner to keep sidewalks, except in driveways, repaired at her expense. It does not appear that she was obligated to assume the cost of any other part of the work. Under the circumstances it is apparent that the $421.91 cost assumed by the petitioner resulted from compliance with a term of the lease, rather than a transaction to acquire a capital asset. The amount therefore can not be treated as a capital expenditure amortizable over the life of the lease. The amount of expense of repairing sidewalks is not separable from any other expenses entering into the above total.

The remaining costs were incurred in wrecking the building and obtaining a permit to cut curbs. The respondent makes a distinction between fees paid for unsuccessful and successful efforts to obtain the

permit. There is no material difference. It was necessary to obtain legal permission to cut the curbs for entrances to the premises; otherwise, the land could not have been used as a parking lot. The effort was expended for the sole purpose of making the lots available to lease. The amounts, together with the fee of $15 for approving the Sigman lease, and the adjusted basis for the building, constitute costs of obtaining the Sigman lease and are deductible ratably over the five-year term of the lease.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HARRON and HARLAN, *JJ.*, dissent.

---

MURDOCK, *J.*, dissenting: I think the unexhausted basis of the building was deductible as a loss in the year the building was demolished because economically worthless and not because of a condition in a lease.